Good morning. We will be hearing one case this morning, Islam vs. Attorney General. And we will start with you, Mr. McKimsey. Good morning. Gavin McKimsey for Petitioner Mr. Self-Approval of Islam. And if I may, I'd like to reserve two minutes for rebuttal.  May it please the Court. The New York statute that Mr. Islam pleaded guilty to reaches a wide range of conduct, including even kissing between close-in-age teenagers. And no one thinks that that conduct amounts to an aggravated felony akin to murder and rape. And yet, here we are. Anywhere you look, the authority points to a narrower federal generic definition. You know, it's a weird thing to say because you say, anywhere you look, the authority. And do you mean statutory authority or do you mean case law authority? Because the real problem for you is case law, right? Like the Second Circuit comes out the other way. We have decisions in Restrepo. You may have problems with Restrepo, but we have a line of decisions after that that kind of suggest that that's a problem. So your choice of the word authority, I assume, is something other than case law because the biggest obstacle to you is you don't have any cases in your favor. In fact, they all go the other way, right? I disagree, Your Honor. The case law that you're referring to in this circuit gave Chevron deference to the board's use of Section 3509 as a guide. But no presidential decision of this court has ever set out the elements of sexual abuse of a minor as to conduct. All of these cases have been individual adjudications where the board has been permitted to use 3509 in a loose, open-ended way that doesn't actually establish what element must be met in order for a conviction to matter. Let me put my question another way. Is there a single case that goes your way? Escobar-Quintana is the primary one that looks to Section 2243. It ignores Section 3509 entirely. It also walks through how to use that and state law in doing the categorical analysis that's necessary here. I appreciate the argument, but we dealt with that in Cabeda, and my concurrence was the minority there. Our court already addressed Escobar-Quintana and concluded, much like the language of Loperbright, that something like a statutory stare decisis remains in place. What do we do with that, with both the language of Loperbright and the language in Cabeda itself, where Judge Jordan wrote, We've noted the Supreme Court typically avoids methodological stare decisis. Federal courts do not treat interpretive methodology as a traditional form of law and concluded that we need to give the necessary respect to our existing precedent, even when we ourselves might be inclined to decide differently now. Certainly, Your Honor. Cabeda was based on Chevron deference, and it said that Escobar-Quintana had not undermined the circuit's precedent in such a way that it could move on from deferring to the board's use of Section 3509. One route here is to say Loperbright has done so, but I'll add that even if the court still looks to Section 3509 as a guide, nothing in the text of Section 3509 would reach the kind of conduct that the New York statute does, and I don't believe the government has suggested otherwise. Their brief did not engage. Really? It says, or other sexual exploitation of a minor. That's right, Your Honor. I mean, that's, you think that's not this, huh? I don't, Your Honor, because sexual exploitation is a term that refers to child pornography offenses, and that is also matched by the structure of Section 3509 that walks through five specific kinds of conduct, including sexual intercourse, actual or simulated, but not including sexual contact generally. How do you square that with Catapan? I'm sorry? How do you square that with our decision in Catapan, where we were looking there at a statute that, a Pennsylvania statute that criminalized things that included touching backs of legs, shoulders, neck, and back? And we said that that was a categorical match for child sexual abuse under the INA, and that it fell not only under exploitation, but also under molestation. Your Honor, certainly something that falls under exploitation is itself an aggravated felony, just not one of sexual abuse of a minor, and molestation also is a term that is not necessarily limited in a way that makes it fall into the especially egregious felony category. But we held otherwise. And, Your Honor, I'm afraid you've caught me off guard. I'm not familiar with that case, and I don't believe either of us cited it. But to the extent that the court has held as to these crimes based on Chevron deference, the court does not have a holding that actually interprets the statute to the fullest extent using all of the interpretive tools that are available to it. And that is what this court must do. It's weird that you say that because the Supreme Court didn't do that. They, you know, they were narrow in Esquivel-Quintana and said, oh, we have to address, you know, big, big question. We're going to localize this to, I think, what, age 16? They were focused on age 16. And so now you're telling us that when the Supreme Court looked at it, they got to pick off and say, we're looking at this narrowly, but now our task, rather than rely on precedent, is to now conduct a broader review than the Supreme Court had right before it elected not to. But we have to today instead of following precedent. That's not it, Your Honor. I think the court has to go as far as the Supreme Court did in as much as it needs to make a comparison that is based on elements and it needs to interpret the statute enough to be able to identify an element and determine whether there's a match. There is just no argument here that kissing or touching of the neck is something that falls into an especially egregious felony category. That's strange because the Second Circuit said otherwise. I mean, you say there's no argument. I guess the Second Circuit, who has, you know, probably primary authority over construing the federal application of New York statutes, said otherwise. I disagree, Your Honor. They didn't? No, they didn't, Your Honor. The Second Circuit in Rodriguez said that Section 3509 was open-ended and that the New York statute was also open-ended and that they were deferring to the board under Chevron to allow that to go forward. Then in Garcia, they said we are bound by Dubique and we are bound by our previous decision and we're not going to revisit that Chevron-deference-based decision, but they did not interpret the federal statute using all the tools of statutory interpretation. Why don't we have the same problem when we've got Restrepo, Catapan, Briava, Martinez, Cabeda? You don't have the same problem for two reasons. One is that none of those cases engaged all the tools of statutory interpretation as this Court must do when it's interpreting federal law, and there's also no precedential holding. Unlike Dubique in the Second Circuit, there's no precedential holding in this circuit that addresses this New York statute. And so interpreting both of those sources of law and defining elements, not just using a guide, not just saying there's this statute out there that suggests some broad range, but actually getting down to the elements of the federal offense, there is no precedent in the circuit that does that. And when you look even at Section 3509, that does not reach kissing or touching of the leg. It enumerates specific acts, and we argue that sexual contact is not something that is among those acts. It's merely an embedded definition. But even ignoring that, even getting that into the broad range of conduct that Section 3509 reaches, its text is still limited to specific enumerated acts that the New York statute does not come close to falling within. But if we look at 3509 as a guide and look to state law, there is some force for your argument. Well, let me put it. Looking at the survey, there are a number of states who say that intimate parts are covered, and most of them seem to define it the same way as 3509. New York has an interesting test where there's three factors, which is what area of the body is touched, which is principally your argument. What is the manner of touching? And under what circumstances did the touching take place? And the manner of touching is a little puzzling to me because that would normally seem to reflect on the intent of sexual gratification. But here, it's in the definition of intimate parts and actually seems to have been relied upon in that sense. It seems like the inception is Graydon. And it seems like in that case, there is a lot of emphasis placed on the fact that the knee was rubbed, suggesting that if the knee were poked, it would not be an intimate part. But I guess I'm not sure if that's a criminal court case, if that is actually the state of New York's second-degree sexual abuse law. So can you address that? You didn't cite any court of appeals cases, and you only cited one superior court case. I think that the New York court's adjudications using the statute are the source of authority for what New York does in treating this law. Certainly, if this were an offense that were not more commonly pleaded out or an offense that had more opportunity to develop the law, then there would be better authority. But based on what there is, this court has to determine what the New York courts do, and that is evidence of what the New York courts do. The fact that the manner of touching is something that they look to is just another example of over breadth compared to even Section 3509, and certainly compared to the kind of offense that is defined in federal criminal statutes. Are there any sort of analogous New York court of appeal cases you can speak to? Like if we were to predict if the court of appeals would endorse this approach, are there any? I'm not aware of more New York cases than were cited in our briefs, and we went back and looked recently to see if there was anything more recent. But the fact of the matter is, the New York courts have said this is how our law is interpreted. It's interpreted broadly. It's non-confining is the term that one court used, and non-confining is not at all how Congress defined the analogous federal offense. Non-confining is not something that's found even in the text of Section 3509 if you do view yourself as bound by Restrepo. And so even if you are going that direction, even if you're using 3509 as a guide, there's nothing there to suggest that this non-confining wide range of conduct is something that would fall into this especially egregious felony category. Let's assume that our precedent has already held that it would cover this conduct. And you point out that traces back to Chevron deference. Help us understand what the instruction is in Loeberright where they're telling us that they're not calling into question prior cases that relied on the Chevron framework. They're still subject to statutory stare decisis despite the change in interpretive methodology, and that mere reliance on Chevron is not a special justification for overruling that prior precedent. Certainly. And I'll note, Your Honor, that with your assumption, there still is the fact that age gap and this court's holding estimates ready to resolve this case independently. But as to the question that you asked, Your Honor, I think the Supreme Court knows how to say that holdings relying on Chevron deference are subject to stare decisis. But it didn't say that. It said something more nuanced. It said holdings that specific agency actions are lawful, are protected, so to speak. And it said that they're protected out of statutory stare decisis concerns rather than ordinary horizontal stare decisis or vertical stare decisis. It said statutory stare decisis, which I don't think anyone disagrees is a term of art that reaches a very specific kind of situation. That's not something this court has to resolve because of these other means for identifying overbreadth in the New York statute. And because of that, we'd ask that the court grant the petition. What is it that you think statutory stare decisis means? Well, as we discussed in the brief, it means that where the Supreme Court has rendered a nationally binding definitive interpretation of a federal statute, that the fact that Congress does not act to override that has a sort of stare decisis effect. That Congress's choice means that when it shifts interpretive methodologies, it does not need to revisit those because Congress has had its bite at the apple, so to speak. That's not the case when there's been a shift like the abandonment of Chevron deference. In fact, the preclusion of an approach in the courts of appeals that relies on Chevron deference. That's not the case that those are all things that Congress would then have to revisit. And I think Congress would be really surprised to learn that it needed to adopt the exact same statutory text all over again now in order for that statutory text that it adopted to be granted priority over the administration's prior interpretations of those statutes. Regarding your knowledge argument, could you address Borden and our case in Henderson where we said the language that against another meant that there was a knowledge requirement? Here we have subjects, another person too, which is very similar in structure. I think, Your Honor, that that sort of approach is precluded by New York state law. What the elements of the New York offense are come down to New York state law. And the statutes that define culpability in New York, section 15.00 in particular, says these are the manners in which someone has culpable mens rea. What about the Second Circuit's interpretation that New York state law would say that there is a knowledge requirement? I don't think that that's binding on the circuit. And I also don't think that it has support in the text of New York law. The text of New York law says, here are the mens reas that amount to culpable mens rea. Here's what must be read into the statute. And so it does not include purpose. It does not include subjecting someone to. That is merely something that this court has to go along with what New York's statutes are. Can I follow up on your response to Judge Krause's question about this passage in Loper Bright? You know, it's an interesting passage. Courts are going to have to really come to terms with what this passage means. I'll tell you what one of my benchmarks for reading this passage is, is I look at the other case, Kaiser. Kaiser also did away with our seminal rock deference without the analogous passage. And so I think what you can say from Kaiser is the Supreme Court's not necessarily in love with endorsing stare decisis for our deference. And so it seems that anything that did rely on our deference, there's no preservation of it in Kaiser. And because there's no preservation of it, everything seems to be in play. And in fact, many courts have said, yes, it's in play. And so I think there's two ways to read Loper Bright, many. But one of the ways to read Loper Bright is to say, gee, we kind of wish we included this outro in Kaiser and we're hoping that people pick up on this and apply that to Kaiser. The other is to say, no, this is different than Kaiser. And rather than throw open the doors like we did with Kaiser, we want to keep most everything in place unless we begin to get stronger reasons. I tend to think that when you look at the two of them together, it's that second view of it's very different than Kaiser where we're blowing open everything that ever relied on our deference ever again and we want most everything to be intact now. That's how I read it. Just be curious, what are your thoughts on Loper Bright in light of the absence of such a passage in Kaiser? It's certainly the case that the Supreme Court did not want to just completely blow things up and throw open the doors. But I don't think that gets you to the position that most everything would need to be preserved, particularly in light of the clarification that the Supreme Court gave, not simply saying the first sentence that we are not calling into question cases that were based on Chevron deference. It could have left it at that. But it elaborated on that. It said we are not talking about specific agency actions. And particularly as to rulemaking, for example, that's very important to not open the door to go back and say all these rules that were passed and then granted deference are now up for grabs. It's less important in individual adjudications where there's finality. But either way, the Supreme Court knows what agency actions are. They're one or the other. And then they said specific agency actions. And so I don't think there's really any room for reading that as saying most everything. I think the Supreme Court said what it meant, which is specific agency actions that approved of, that were based on. So you're drawing a distinction between agency interpretations and agency actions, at least interpretations that don't manifest themselves in a rule? Absolutely, Your Honor. And I think that's what Loverbright has just shot through with instructions over and over to courts to do the duty of interpreting the law without throwing up their hands and giving up early. And so I don't have any way of reading Loverbright to say all of this material for the past 20 years was not only unlawfully abandoned to the administration, but then is going to be enshrined forever or until at least the Supreme Court has the chance to take it up because lower courts won't be allowed to. That just can't be what the Supreme Court was saying when it narrowed its answer on the scope of its decision to specific agency actions and to those holdings that those actions were lawful. If it had said to actions generally without even mentioning that they were lawful, that would be a better argument. But they were preserving specifically the proposition that those actions were lawful ones without drawing in interpretations generally as instantiated, reified source of authority that is not going to be subject to challenge moving forward. Okay, we'll hear from you on rebuttal. Thank you. Mr. Hayes, good morning. Good morning. May it please the Court, Timothy Hayes on behalf of the Attorney General. Restrepo's definition controls this case. Wilbur Bright did not overrule Restrepo or the cases that followed. It's interesting that in Wilbur Bright, the Supreme Court said stating that a prior case was wrongly decided is not a justification for overcoming statutory stare decisis. And that's what we have here. But why doesn't the earlier phrases that your colleague has pointed out narrow which cases the Court was talking about in Wilbur Bright? And can it really be, to follow up on where your colleague left off, that every decision of a court of appeals that has been decided based on Chevron deference is now forever enshrined unless the Supreme Court takes up that particular interpretation? Well, I wouldn't, I mean, obviously a court of appeals can go on bond too and change it if they wanted to. That's permitted under most court rules. But with statutory stare decisis, when you've decided a statutory term and it's relied on for a long period of time, as in this case, I mean, in the Second Circuit, it's been relied on for more than 20 years. By my count, in this circuit, it's been relied on for more than 15. There's entrenched reliance interests on that interpretation being the correct one. I'm sorry, what is the reliance interest? You look to case law in order to determine whether a crime is going to actually be an aggravated felony, if it's going to be a crime of moral turpitude. So particularly when people are pleading in criminal cases, a lot of times they look to court to determine how best to handle their criminal matter. But wouldn't it relieve those interests if the interpretation that's espoused by petitioners were adopted? It would, Your Honor. But the Supreme Court was pretty clear that courts are not riding on a clean slate. I read Wilbur Wright as being very, very clear on that, and it's more attuned to Judge Phipps' second point on that. That's how we read it. It's the term statutory stare decisis, and it can be read to focus on, with the specific agency action immediately preceding it, that it's really focused on agencies' interpretations of particular statutes. And if that's the case, and we can revisit our opinions that aren't dealing with agency action, are still interpreting statutes, but it's judicial interpretations, not agencies, doesn't that open the door for the same arguments that I had raised in Cabeda in the interpretation of the statute? To an extent it could, but it would also be implying that what the board came, or what the board's definition or guidepost in isn't the best read of the statute, and in my view it is. It does refer to a federal statute. It's not a criminal statute, but it is a federal definitional statute of a child witness protection program, and it best captures the broad variety of crimes that are sexual abuse of a minor. If you particularize the term sexual abuse of a minor too narrowly, it will not encompass lots of crimes that ordinary people would find to be sexual abuse. They're saying under Skidmore it would turn out the same way. I think so, yes, Your Honor. I think not every court has deferred to Rodriguez, Rodriguez, but several courts have, and even the courts who haven't, like the Ninth Circuit, they would find a case like this per se abusive because the victim has to be under 14. I can't say every court, but every case I've come across under 14 seems to be a particular inflection point where they find those minors particularly vulnerable. Can you address, even if 3509, even if we adopt your view that Restrepo is still binding upon us, even in light of Loeb or Wright, and 3509 is the guidepost, I guess I'm still pondering what I view as something that seems unique to New York in that the manner of touching helps define what is an intimate part. There seem to be plenty of cases, federal and state, where the manner of touching can reflect the intent to sexually gratify the defendant. But as far as defining what is an intimate part, that still, I'm struggling to see if that's a categorical match. Well, the guidepost definition includes sexual exploitation of children, and then it also has, under sexually explicit conduct, it lists a variety of body parts, and one of the body parts would be the inner thigh, so that would be a body part. So I can't speak exactly to your question because I haven't come across a case that's exactly like that. It seems to be left to the jury to kind of infer the manner. But the body part, I mean, in Graydon, the one where this definition was first published, was that the knee is an intimate part, and it did rely a lot on the fact that it was rubbed. And again, it seems like if it were poked, it's not an intimate part. And I'm just, is that a categorical match to the federal generic definition? Let's say that the federal generic, I know you sort of take a different view, but if we take a narrow approach, as an Esquivel would say, the question here is, what is a criminal sexual contact? I'm just not, I haven't seen, and that's why I'm asking you, support for the idea that the manner of touching is part of the generic definition of the part that gets touched, whether it be called an enumerated list in 3509 or an umbrella category of intimate part, which is arguably broader, but maybe still encompassed. The manner is where I'm just not, I haven't really seen any support for that. Well, there are other jurisdictions that do have kind of atypical body parts. Like Montana, for example, has case law where if you touch the victim's hips or belly in a sexualized manner, that would be enough. That would be considered an intimate part. But that's, there seems to be a difference there again, because the only one that seemed to be like squarely in the defining intimate part by manner was Kentucky, was one of the cases you all put in your chart. But the other ones where they sort of also say lascivious manner, sexualized manner, that seems to me to be a different element than what the part is. Maybe that doesn't matter. I mean, that's what I'm trying to suss out here. Well, I mean, when I did my research on this, and I was honestly a little surprised, there are, by my count, 15 states that allow body parts that are beyond what you would typically consider sexual body parts. In two of those states, Alabama is one of them. Like Alabama says, any part of the body which a reasonable person would consider private with respect to touching by another that's unfamiliar with them. And I suppose under that definition, you can imagine that someone could say if you're rubbing their knee, they would find that, as a young child, they would find that gross and offensive. But I do take the point that if you take it to an extreme, without some sort of sexualized intent, then it becomes inadvertent touching. And when you're talking about inadvertent touching, that's not sexual abuse of a manner. So when we talk about kind of a federal generic, like how do we go about this? Do we begin to look at all of the states and do kind of a compare, contrast, look for this common nucleus? Or you still think we should pay attention to 3509? Or, you know, like what do we do? You said 3509 is not itself a criminal statute. And so like methodologically, what do we do here? Should we just abandon 3509 and go straight with a state-by-state kind of, these look like the generic, you know, elements of a federal generic? Well, I think the Restrepo line of cases is the best way of going about it. And we maintain keeping the Rodriguez-Rodriguez definition, because even though it isn't a criminal definition, it is the best definition that encapsulates most crimes that ordinary persons would consider sexual abuse of a minor. As far as like a state survey, I think the state survey sort of indicates that it's really hard to get an element-by-element take on this, at least as far as when sexual abuse of a minor was had in 96. States were kind of all over the place. There were still a lot of lewd statutes that were covering minors but were covering adults. Some say sexual imposition. You also have categories of crimes, and I'm not even talking about child pornography or the Internet coming to the forefront, but things like, you know, a child posing nude in front of someone and they're taking pictures of them or they're coercing them. Those are kind of things that don't involve an element of touch, but the 3509 definition does encapsulate. We don't really have the option to avoid defining the elements when we have to apply the categorical approach, right? We have to figure out what this means, and we have the Supreme Court in Esquivel-Quintana telling us that, you know, a definition that the government was also espousing there that would encompass what the state's law was would turn the categorical approach on its head, and defining the generic federal offense of sexual abuse of a minor is whatever is illegal under the law of the state where the defendant was convicted. Under the government's preferred approach, there's no generic definition at all. Aren't you making the same argument here that the Supreme Court has already rejected? No, I'm saying the definition is the majority of the definition is 3509. I believe the government was arguing in the Supreme Court that it would have to be illegal under the law of a state and involve a minor. I think those were the three elements that they were proposing. That's not what we're proposing. We're saying to stick to 3509 as a guide. You know, it's interesting, though, because we've got this kind of weird problem if we want to stick to 3509 because we've got the Lope or Bright problem, right, which is maybe we should review it. But, you know, it feels like it's getting to be a one-two punch because it's not just Lope or Bright, but it's Escobar-Quintana that kind of says, hey, we've got an appendix. We've got a chart at the end, and we don't like using 3509. So now we've kind of got a double problem, which is the Rodriguez-Rodriguez said, use 3509. The Supreme Court seemed to say, yeah, that's not how we're going to do it anymore. And then we've got Lope or Bright hanging around in the background being like, don't defer. And the deference is to something the Supreme Court has kind of said, that's not our chosen way. So, you know, I get that there's precedent. I know that we're honoring, and maybe Lope or Bright might not be enough, and maybe Escobar-Quintana might not be enough. But you put the two together. And isn't that kind of potent for saying maybe we've got to do our own analytical, textual analysis, a little bit, you know, go down the road of articulating a federal generic different than Rodriguez-Rodriguez? Well, I think there's a little over-reliance on Escobar. I think the Supreme Court ruled very narrowly because of the ages of the participants. And here we're dealing with someone under 13. So I think Rodriguez-Rodriguez would fit this mold a lot better. I think the other thing that was interesting about the Escobar case was it was unanimous. Well, it's really hard to get nine people to agree on anything. So I think that they deliberately ruled very narrowly in that case in order to get a unanimous opinion. But I don't think it necessarily speaks broadly to reconsidering the entire definition. I mean, doesn't that kind of flip on its head for you because you've got a unanimous decision that basically says, yeah, we aren't in love with 3509 is the source of definition? Well, they just didn't mention 3509. I mean, I appreciate the point we're omitting it, but there is an inferential step there. The Supreme Court hasn't actually outright said anything about Rodriguez-Rodriguez. But what they did mention in Rely On was 2243. And they laid out a particular methodology for how to go about interpreting the term child sexual abuse. Why now that we are freed from Chevron deference with Loper Bright, why wouldn't we look to that methodology and now apply it? Well, I don't think you're free with Loper Bright. But putting that aside, 2403 is far too narrow. It specifies victims between 12 and 15. There are plenty of state sexual crimes that are well under 12. It doesn't encompass the broader array of crimes that most people consider sexual abuse. Sexual abuse doesn't have a cross-reference. If Congress wanted that, they could have easily just cross-referenced that statute and called it a day. But they didn't. They left it undefined. But the Supreme Court has pointed us to that in Escobar-Quintana. And in particular said that the structure of the V.I.N.A. suggests sexual abuse of a minor encompasses only especially egregious felonies because it's listed with murder and rape. So that seems to say explicitly it's not all child sexual abuse. It's not all exploitation, all molestation. It's only those especially egregious types of sexual abuse of a minor. Is it okay to answer my time? Yes, please. What I would say to that is sexual abuse of a minor, I don't think it has to be – rape is something that carries lifelong consequences. Sexually abusing a minor is equivalent to that and carrying lifelong consequences. And I would certainly say that with a minor under 14, any sexual conduct could be detrimental. And it could arise to that level because we're dealing with a protected class of victims. Just to follow up on Judge Krause's question, it seems that there's a little bit of a conundrum because typically what we're supposed to do is define a federal generic. And so we set out to define a federal generic of sexual abuse of a minor. But now we aren't going to do that. We're now going to at least say no, it doesn't mean that because we're using nosoterosoesis and we have to say it means not just sexual abuse of a minor, but some very serious form of sexual abuse of a minor akin to murder or rape. And so now we're going to skim off somehow based on context and make a narrower federal generic of sexual abuse of a minor because we understand it not to be the full meaning of the term, but a narrower meaning of the term. Well, I would say when you're trying to define the term, you're obviously going to do it in the context of the case before you. And I would reiterate that this deals with a child victim that's under 14. And even the Ninth Circuit has said that's per se abusive. When you're dealing with someone that young, it's abusive. So are you suggesting that the federal generic definition would account for, have different definitions based on the age of the victim? It's possible, and yes, that's possible. But that's how some courts have interpreted it, yes. And so would that mean that we don't need to define a complete federal generic? We just need to define a federal generic that would encompass younger victims, victims under 14? It may be hard to define with age gap and everything like this victims who are 16. But when you get below 14, it strikes me that the amount of conduct that we're going to see generally criminalized by states goes way, way, way up. And so maybe much like the Supreme Court in Escobar could pick off and say we don't have to define this for all times, it found age dispositive. We would be focused on just the federal generic for under 14 victims? Some courts have ruled narrowly that way, yes. It's extremely difficult, I think, to encompass a broad range definition by looking to one statute. I think that's why the board turned to this witness protection statute. But the act in question in Escobar-Quintana is laid out in the statute. Rape is already listed along with child sexual abuse. So in interpreting the term statutory rape statute, the court could focus on an age limit because it didn't have to concern itself with the scope of conduct. We're dealing with the scope of conduct question for child sexual abuse. So I'm not sure, given that, how you can point to age alone as a way to define what the terms, what the elements are. Well, the elements are, the primary term is 3509, which is, you know, the employment use, persuasion, inducement, or enticement or coercion of a child to engage in sexually explicit conduct or sexual exploitation. Then they break down sexually explicit conduct. So I think that would be the primary definition, generic definition. Okay. Thank you. Thank you, Your Honors. I think what's most striking about the government's presentation is that it gives almost no credit to Congress's choices. And Congress chose in the very same act that adopted the INA provision to define a crime called sexual abuse of a minor that reached specific conduct. And it's not conduct that falls much further from touching that involves the genitals. It is including certain touching in 2246 paragraph 2D. But Congress chose to draw the line there to punish those crimes with a term of up to 15 years imprisonment and to punish less serious touching with a term of only two years. And this does not involve using 2243 as some exclusive guide. There are other provisions in neighboring provisions that address the contact with children under 12, for example. And so, no, Your Honor, to answer the question that you were just asking, this Court does not have to give a complete definition that covers every possible scenario. But as to touching of someone just under 14, Congress made a decision when it adopted the… Can I tease that out a little bit? Because, like, I get that non-star source is something that you're really hitting on because you say sexual abuse of a minor has to be akin to murder or rape. But methodologically, when we look to define murder or rape, we look to sources of state law, not sources of federal law. And so now it seems that you're saying, no, methodologically, when you look to sexual abuse of a minor, please look at Congress's choice. But that's not what we methodologically do to define murder. And that's not methodologically what we do to define rape. So if you really believe in non-star sources, you know, there probably shouldn't be a scene there. I disagree, Your Honor. And I think actually the government agrees with us on this point that murder and rape have common law definitions that one can discern from a body of general law and that sexual abuse of a minor does not. In fact, I don't think most states use the term. But that means that anchoring what Congress meant when it used that language is best rooted in what Congress meant when it used that language in the identical statute or in the contemporaneous statute. And I think what you might be asking about is, what is the effect of state law? And I'm happy to address that, too. The government mentioned that only in its count, 13 to 15 states had something even approaching New York's approach here. But it doesn't deny that New York's approach is an outlier amongst the states. And I think its own survey reflects that. And it doesn't argue based on that survey that even if you do look to state law, that that would somehow guide the court in a different direction than looking to federal law. If we were to maintain that Restrepo is presidential and 3509 is a guidepost, to Judge Krause's earlier point about Catapan, which I also was unfamiliar with. So I'll read you what I've got on it and just want to hear your response. So 3509 does say that molestation falls within sexual abuse. And I mean, it doesn't if we're going with 3509, it covers sexual molestation. And we said that because there is no further explanation of that term within 3509, then we go by the dictionary. And the dictionary is that it's Black's law, the act of making unwanted and indecent advances to or on someone, especially for sexual gratification. And therefore, the argument about like touching the back or other things was still covered by 3509 because of the word molestation. Can you address that? So I think what that demonstrates first is that that sort of conduct can fall within a broad category of sexually explicit conduct. Am I right about that? I think that's the structure of the statute where that ends up in there. The government is pointing to this provision as a broad guide and saying, well, this defines the scope of the generic fence. But it's in the definition of sexual abuse. I'm sorry I didn't speak. So sexual abuse is blah, blah, blah, blah, blah. For sexual explicit conduct or the rape, comma, molestation, comma, prostitution, comma, or other forms of sexual exploitation. So I think that saying that that falls within sexual abuse in that statute is something that this court, if it were stuck with Restrepo, if it were using Section 3509 as a guide, could take into account in being guided as to the definition of the term. But it can't treat that as the only guidance and it can't really treat it as the most important guidance, given what the Supreme Court has said about Section 2243 being a closely related statute and given that Congress made a different choice in defining the federal crime. And so to the extent that the court looks to Section 3509 as a guide, it can be persuaded to whatever extent it is, but it can't ignore the other sources of authority, both in federal law and in looking at state law, to say that to the extent that molestation falls within some definition of some way of using the term sexual abuse, that still states did not treat that as an especially egregious felony akin to murder and rape, neither did Congress. And that is ultimately the question, is not some technical exercise about the wording within Section 3509. And that's partly because the government has only ever used it as a guide. It has not chosen to set out a specific element. And so when this court does define the element, it needs to look to all those areas. So why wouldn't this definition work for federal generic for under 14? Mental state or at least some form of sexual gratification being the intent and some form of touching? Because some form of touching grabs everything, more or less. Why wouldn't that work? Sexual gratification, some form of touching, because that takes us out of the cases that are just like, you know, genitals only touching and stuff like this. And we say, hey, you know what, why are we dividing the line between where the touching happens? Why not just some form of touching for sexual gratification? That gets almost everything. And if the goal of generic is to get almost everything, that gets it. Why isn't that a good starter point? I mean, if you look at, like, to me the other biggest, in our case, the other biggest problem we have with the Immigration Code is crime involving moral turpitude. Like, what does that mean? And we have gone and defined that at an absolute level of generality. Culpable mental state, you know, the actus reus is, again, very, very, very broad. And so when we get something that kind of feels more like family of crimes, it seems that we blow out to some degree of generality the generic. So why isn't touching coupled with sexual gratification good enough to grab just about everything? For under 14 at least. I think the premise that one should be trying to grab just about everything is taking the wrong approach from the get-go. And there's two reasons for that. One is that Congress did define crimes involving moral turpitude broadly, or left it broadly available to be defined. Child abuse, that's another ground for deportability that is not within the aggravated felony category. And so the idea that there needs to be some really broad bucket here in order to catch these sorts of things just doesn't have any basis. But the other reason that I think that's not good enough, so to speak, is that it ignores both Congress' choice in limiting even abusive sexual contact. You know, under 2244 that draws in 2246 paragraph 3, even that category, which is broader than sexual acts, even that category is still a limited one. And that still only leads to a term of up to two years imprisonment and is not treated as an especially egregious, aggravated felony that is akin to murder and rape. And it also ignores the state law approach where even looking to the least culpable contacts amongst the state laws, by and large they did not have anything close to what New York does. And so at bottom, defining the term to reach all of this possible conduct, I think ignores several choices that Congress has made and ignores the choices that the states were making in the lead up to when this statute was adopted. It's awkward when you do the state survey and you talk about 15 or 10. What's a persuasive number that it's part of? I acknowledge it's weird to pin down a number. I'm just trying to get a sense from you. When does it sort of become persuasive that that's the generic definition? Understanding state survey is not the sole thing that we rely upon. I think it would be persuasive at somewhat more than a majority, although it wouldn't be definitive, but the government's position is that only 13 to 15 states even are moving in the direction that New York is much less actually reaching the breadth that New York does. So I don't think even the government is saying, and I certainly didn't argue in the supplemental brief, that there was anything persuasive about state law to suggest that New York was not an outlier here. And given that, given that the states didn't define it this broadly, given that Congress chose not to sweep in all of the possible conduct within sexual abuse of a minor, and given that it chose not to sweep in all of the possible ways of deporting somebody into the aggravated felony provision, it chose to exclude a lot of conduct from the aggravated felony category. And on remand, the board can certainly take those up and define whether it's child abuse or a crime involving moral turpitude, but it is not an especially egregious felony akin to murder and rape. And Congress chose to make that the aggravated felony that comes with these consequences. I take your point that if we interpret Loeb or Bright to sweep broadly, that it would free up courts to revisit their precedent that was based on Chevron alone. When we go back to Restrepo, our analysis in Restrepo was in part deference, but it also proceeded independently to consider what Congress intended and how to interpret its language and legislative history. So even if Loeb or Bright might otherwise allow us to revisit that precedent where we have an independent basis for previously coming out the other way, you need us to take Esquivel-Quintana as well as Loeb or Bright, right? To say that we can set aside our precedent. That's right, Your Honor. And I think this goes back to Your Honor's question about the one-two punch. There's no doubting that Esquivel-Quintana knocked out many of the premises that Restrepo was relying on. It did not understand congressional intent in the same way as Restrepo had, for example. And so we certainly do need to look to both of those. I'll note, though, also that the curious thing here is that Restrepo and further cases of the circuit have not actually defined an element. The outer reach of the deference that has been given is it's acceptable to look to 3509 as a guide and then to sort of, it seems to skip ahead to, well, it's broad and so it's going to reach this conduct. And so I think the Loeb or Bright question is less tricky here where there isn't an actual definition of the statute that is enshrined in this court's precedent. It's just in these case-by-case adjudications that don't actually elucidate what prohibited touching falls within the generic definition. So, Katipan, there may be an issue. And I had not appreciated it was not in your brief. It was not my intention to put you on the spot or your colleague. So I think it would make sense and we'll put out an order after argument to allow you to have some supplemental briefing addressing that. Certainly, Your Honor. And if there are no other questions, we'll rest on the briefs as to Kat. And we thank you for your time. We thank both counsels for a very helpful argument and briefing in this interesting and difficult matter.